NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0007n.06

No. 22-4083

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jan 04, 2024 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| ANDRE HARGROVE, | ) |  |
| Defendant-Appellant. | ) | OPINION |
|  | ) |  |

Before: McKEAGUE, LARSEN, and MURPHY, Circuit Judges.

LARSEN, Circuit Judge. Andre Hargrove pleaded guilty to two drug charges. The district court sentenced him to 80 months' imprisonment. Hargrove appeals. Seeing no error, we AFFIRM.

I.

In 2020 and 2021, Andre Hargrove helped to ship packages of drugs through the postal system. In early 2021, United States Postal Service inspectors seized two parcels of drugs, one containing methamphetamine and the other containing fentanyl, and tied them to Hargrove. A grand jury indicted Hargrove for attempted possession with intent to distribute methamphetamine and fentanyl. Hargrove pleaded guilty to both counts, and as part of the plea agreement, the government agreed to recommend a base offense level of 30.

The PSR calculated Hargrove's base offense level at 34. At the sentencing hearing, the district court adopted that base offense level, readjusted the Guidelines range, and sentenced Hargrove below the Guidelines range to 80 months' imprisonment. Hargrove appeals.

II.

Hargrove argues that the district court should have allowed him to withdraw his guilty plea after the court rejected the plea agreement's terms by calculating a higher base offense level than agreed to by the parties.[1]  Because he did not raise this argument in the district court, we review for plain error.  *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

Federal Rule of Criminal Procedure 11(c)(1) catalogs three types of plea agreements.  The parties may agree that the government will:

> (A) not bring, or will move to dismiss, other charges;

> (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or

> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(A)–(C).

The "type" of plea agreement (A, B, or C) determines the court's duty.  *See United States v. Hyde*, 520 U.S. 670, 675 (1997).  In a "type C" agreement, the government "agrees that the defendant should receive a specific sentence" or sentencing range.  *Id.*  This type of agreement "binds the court once the court accepts the plea agreement."  Fed. R. Crim. P. 11(c)(1)(C).  But if the court rejects a type C agreement, the court must "inform the parties" of the rejection; "advise

---

[1] Hargrove also argues that his "appellate waiver was invalidated because the [district] court did not fully comply with" Federal Rule of Criminal Procedure 11.  Appellant Br. at 14.  We need not decide that question because the government concedes that the plea agreement's appellate waiver doesn't bar Hargrove's challenge on appeal.  *See* Appellee Br. at 5 n.1; *United States v. Jones*, 417 F.3d 547, 549 (6th Cir. 2005).

the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea"; and "advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." Fed. R. Crim. P. 11(c)(5)(A)–(C). In a "type B" agreement, the government agrees only to "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate." Fed. R. Crim. P. 11(c)(1)(B). Such an agreement "does not bind the court," *id.*, and the defendant has no right to withdraw his plea in the event of a rejection, *see* Fed. R. Crim. P. 11(c)(5).

Hargrove contends that the district court violated Rule 11(c)(5) by not allowing him to withdraw his plea once the court arrived at a base offense level inconsistent with the plea agreement. This is a curious argument because Hargrove himself acknowledges that the plea agreement says that it was made "[p]ursuant to Rule 11(c)(1)(b)" and provides that it "is not binding upon on the court." Appellant Br. at 23. Coupled with his acknowledgment that a court must follow the procedures of Rule 11(c)(5) when rejecting an agreement made under Rule 11(c)(1)(C), and his lack of a similar claim regarding Rule 11(c)(1)(B), Hargrove's brief seems to rebut his only argument.

The record confirms this rebuttal. The plea agreement states that the parties reached an agreement "[p]ursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure." And the agreement contains a paragraph entitled, "Sentencing Recommendations Not Binding on the Court," in which Hargrove acknowledged "that the recommendations of the parties will not be binding upon the Court, [and] that the Court alone will decide the advisory guideline range . . . and what sentence to impose." Further, Hargrove acknowledged "that once the Court has accepted Defendant's guilty plea, Defendant will not have the right to withdraw such a plea if the Court

does not accept any sentencing recommendations made on Defendant's behalf or if Defendant is otherwise dissatisfied with the sentence." By its plain terms, then, the plea agreement was a "type B" agreement, made under Rule 11(c)(1)(B). Such an agreement neither binds the court nor requires that the defendant be given the opportunity to withdraw his plea should the agreement's sentencing recommendations be rejected.

There was one moment of confusion, either during the sentencing hearing itself or in the transcription of it, that warrants brief discussion. The transcript records the government as saying that this was a Rule 11(c)(1)(C) plea in response to a somewhat confusing question from the court. In this court, the government says that this "appears to be a typographical error in the transcript." Appellee Br. at 8. Hargrove doesn't dispute that characterization. And the rest of the sentencing hearing shows that the district court correctly understood that the plea agreement was made under Rule 11(c)(1)(B). Without objection from Hargrove, the court explained its recollection that the agreement left it to the court to calculate the Guidelines range, regardless of the range the parties had negotiated in the agreement.

The record reveals that the district court properly understood the type of plea agreement before it. Because the parties had negotiated a "type B" agreement, *see* Fed. R. Crim. P. 11(c)(1)(B), the court had no obligation to allow Hargrove to withdraw his plea on the ground that the court had calculated a different base offense level than the parties had negotiated. The district court did not err, much less plainly so.

* * *

We AFFIRM.